IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

CINDY M. STILTNER,

    Plaintiff,

v.                                        Civil Action No. 3:13-cv-7513

JURY TRIAL DEMANDED

CABELL COUNTY COMMISSION,

    Defendant.

## COMPLAINT

Now comes Plaintiff Cindy M. Stiltner ("Plaintiff"), by counsel, and makes and files her Complaint against the Cabell County Commission ("Defendant") pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the West Virginia Human Rights Act, as follows:

## PARTIES

1. Plaintiff is a resident of Cabell County, West Virginia.

2. Defendant Cabell County Commission is a political subdivision existing in Cabell County, West Virginia.

3. At all times relevant hereto, Defendant was acting through its agents, supervisors, directors, officers, employees and assigns and within the full scope of such agency, office, employment, or assignment.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims asserted herein in accordance with 28 U.S.C. §1331 as Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended, along with pendent state law claims under the West Virginia Human Rights Act.

5. Venue is appropriate in the U.S. District Court for the Southern District of West Virginia pursuant to 28 U.S.C. §1391(a)(1), because Defendant exists in Cabell County, West Virginia, which is in the jurisdiction of this Court.

## FACTS

6. Plaintiff was hired by Defendant as a part-time, home-confinement officer in or about December of 2008. Beginning October 1, 2009, Plaintiff became employed on a full-time basis. At that time, and continuing throughout the remainder of her employment, she was the only female among Defendant's eight to ten home-confinement officers.

7. In April of 2009, Plaintiff was provided with a copy of the Cabell County Sheriff's "General Order 03-38" related to the qualifications for carrying a firearm. "General Order 03-08" provided that home confinement officers were required to "successfully qualify twice a year with the departmental firearms instructor." In the event that the officer failed to qualify, General Order 03-08 provided that the officer was to be given a remedial block of instruction on the fundamentals of marksmanship and be afforded two additional attempts to qualify. General Order 03-08 further provided, "In the event that the authorized member is still unable to qualify, their employment will be terminated."

8. Despite the provisions of "General Order 03-38," Defendant did not enforce such policy consistently or at all. Upon information and belief, some individuals were not required to attempt qualification at all, while others who did attempt qualification were given additional opportunities to qualify beyond those specified in the policy and they remained employed.

9. In 2010, Plaintiff became pregnant. When it was learned that Plaintiff was pregnant, her male co-workers began to discriminate against her, making comments about her pregnancy and regarding her as unable to do her job.

10. During her pregnancy, Plaintiff's male supervisor requested her to switch from her usual evening shift to the day shift. The male supervisor stated to Plaintiff that another home confinement officer had retired and that, as a result of his retirement, Plaintiff was "needed" on the day shift.

11. After Plaintiff began working the day shift, however, she discovered that her supervisor had made the decision to change her shift based upon her pregnancy. A co-worker informed Plaintiff that she could not longer be responsible for her usual duties, stating words to the effect, "I was told you are off the road because you are a liability. We don't know what to do with you. You are the only uniform that is pregnant." Thereafter, in lieu of her usual duties, Plaintiff cleaned the bathrooms, took out the trash, and scheduled inmates.

12. In the meantime, another female employee in the Cabell County Sheriff's Department felt compelled to hide her own pregnancy and to quit her job rather than reveal the pregnancy.

13. Plaintiff's son was delivered by C-Section on February 13, 2011. Following his birth, Plaintiff experienced health complications that necessitated additional leave from work. Nevertheless, Defendant required Plaintiff to return to work and refused to allow her to use her accrued vacation time as additional sick leave time. Plaintiff's male supervisor informed Plaintiff that she did not "work enough" to be able to take the time off. In the meantime, Plaintiff's male supervisor permitted a male employee who had suffered a heart attack to use all of his accrued vacation time as sick leave.

14. Plaintiff returned from maternity leave on April 16, 2011, although she had not fully recovered from all health complications.

15. On April 20, 2011, only four days after Plaintiff returned to work, Defendant required Plaintiff to shoot a handgun for the purpose of qualifying pursuant to General Order 03-38. Plaintiff had not received any training from the Cabell County Sheriff's Department related to handguns; nor had she shot a handgun in nearly two years of her employment. Not surprisingly, she failed to qualify upon her return to work.

16. In the meantime, Plaintiff's work environment continued to be hostile towards women. In June of 2011, a male co-worker remarked to others that Plaintiff "was worthless since [she] got pregnant and that if he got promoted to supervisor, [she] would be gone." Plaintiff complained to her supervisor about these discriminatory remarks. Nevertheless, the co-worker was not disciplined.

17. Instead, Plaintiff continued to receive disparate treatment based upon her gender, and she suffered retaliation.

18. Plaintiff was not permitted to have her son in her police cruiser, although a male home confinement officer was permitted to have children in his car. A male deputy drove his family members to yard sales in his cruiser, while other male officers drove family members in their cruisers.

19. Plaintiff was informed that she must obtain prior approval before she would be permitted to perform any work outside of the Cabell County Sheriff's Department, although male home confinement officers were not required to do so and although Plaintiff had not ever been subject to such requirement previously.

20. In June of 2011, as Plaintiff was preparing to shoot a fireman to attempt qualification on a second occasion, her male supervisor sought to intimidate her by threatening that she would be fired if she did not qualify on that occasion. This was the case, even though Defendant's own policy stated that Plaintiff was first to be given remedial instruction and then *two* additional attempts to qualify following such remedial instruction. Following this unwarranted threat, Plaintiff failed to qualify the second time.

21. On July 22, 2011, Plaintiff failed to qualify on a third occasion.

22. By letter dated July 29, 2011, Plaintiff was discharged from employment effective July 30, 2011, as a result of "[her] inability to qualify in accordance to CCSD Departmental General Order 03-38, Section 111, Letter C."

23. Although Defendant fired Plaintiff for this alleged reason, Defendant did not apply the same standards to male employees. Indeed, at least four male employees had been given more opportunities than Plaintiff to qualify to carry a firearm and were not fired.

24. The reason for Plaintiff's discharge from employment was pre-textual and a cover-up for the true reasons that motivated Defendant to fire Plaintiff. Defendant was motivated to fire Plaintiff based upon her gender, her pregnancy, and/or the fact that she complained about discrimination.

25. On April 18, 2012, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission related to the discrimination and retaliation to which she was subjected.

26. On March 13, 2013, she was issued the Notice of Right to Sue attached hereto as Exhibit A.

27. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, emotional distress, humiliation, embarrassment and ridicule, and other compensatory and general damages.

### COUNT ONE: UNLAWFUL DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

28. Plaintiff reincorporates herein each of the preceding paragraphs 1-27 as if set forth verbatim herein.

29. At all times relevant hereto, Defendant was an "employer" within the meaning of 42 U.S.C. §2000e (b).

30. At all times relevant hereto, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e (f).

31. During the course of her employment, Plaintiff was subjected to less favorable terms and conditions of employment than male employees because of, or on the

basis of, her gender or sex, and/or because of, or on the basis of, her pregnancy, childbirth, or related medical conditions.

32. During the course of her employment, Plaintiff was further subjected to unwelcome and offensive comments about her gender and sex and/or about her pregnancy and childbirth. Plaintiff opposed such discriminatory practices by complaining to her supervisor.

33. Upon complaining, however, Defendant failed to discipline the individual who made the remarks, and instead, retaliated against Plaintiff by continuing to subject her to disparate treatment and by unlawfully discharging her from employment.

34. Through Defendant's unlawful conduct, Defendant has acted to discriminate against Plaintiff based upon her gender, sex, and/or pregnancy, and to retaliate against her for opposing discrimination, in violation of 42 U.S.C. § 2000e-2 (a) and 42 U.S.C. §2000e-3 (a).

35. As a direct result of Defendant's unlawful conduct, Plaintiff has suffered injury and damages, including but not limited to, lost wages, emotional distress, humiliation, mental anguish and other damages for which Defendant is liable.

36. Based upon Defendant's willful, reckless, and/or malicious conduct, Plaintiff is entitled to recover punitive damages.

37. Plaintiff is also entitled to recover her attorneys fees and costs.

### COUNT TWO: UNLAWFUL DISCRIMINATION AND RETALIATION IN VIOLATION OF THE WEST VIRGINIA HUMAN RIGHTS ACT

38. Plaintiff reincorporates herein each of the preceding paragraphs 1-37 as if set forth verbatim herein.

39. At all times relevant hereto, Defendant was an "employer" within the meaning of the West Virginia Human Rights Act, W.Va. Code §5-11-3(d).

40. At all times relevant hereto, Plaintiff was an "employee" within the meaning of the West Virginia Human Rights Act, W.Va. Code § 5-11-3(e).

41. During the course of her employment, Plaintiff was subjected to disparate treatment and less favorable terms and conditions of employment than male employees because of, or on the basis of, her gender or sex, and/or because of, or on the basis of, her pregnancy, childbirth, or related medical conditions.

42. During the course of her employment, Plaintiff was further subjected to unwelcome and offensive comments about her gender and sex and/or about her pregnancy and childbirth. Plaintiff opposed such discriminatory practices by complaining to her supervisor.

43. Upon complaining, however, Defendant failed to discipline the individual who made the remarks, and instead, retaliated against Plaintiff by continuing to subject her to disparate treatment and by unlawfully discharging her from employment.

44. Through Defendant's unlawful conduct, Defendant has acted to discriminate against Plaintiff based upon her gender, sex, and/or pregnancy, and to retaliate against her for opposing discrimination, in violation of the West Virginia Human Rights Act, W.Va. Code §5-11-1 *et. seq.*

45. As a direct result of Defendant's unlawful conduct, Plaintiff has suffered injury and damages, including but not limited to, lost wages, emotional distress, humiliation, mental anguish and other damages for which Defendant is liable.

46. Based upon Defendant's malicious conduct, Plaintiff is entitled to unmitigated lost wages.

47. Based upon Defendant's willful, reckless, and/or malicious conduct, Plaintiff is entitled to recover punitive damages.

48. Plaintiff is also entitled to recover her attorneys fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) That she may have a trial by jury;

(b) That she be awarded all damages provided by law, including but not limited to, lost wages and benefits, damages for emotional distress, humiliation and mental anguish, unmitigated lost wages, and other damages for which Defendant is liable;

(c) That she be awarded punitive damages;

(d) That she be awarded attorneys fees and costs;

(e) That she be awarded such other relief as this Court may deem as just and equitable.

**CINDY M. STILTNER**

*By Counsel*

_____
Maria W. Hughes, Esq. (WV Bar No. 7298)
Mark Goldner, Esq. (WV Bar No. 11286)
HUGHES & GOLDNER, PLLC
10 Hale Street, Fifth Floor
P.O. Box 11662
Charleston, West Virginia 25339
(304) 400-4816
(304) 205-7729 *facsimile*
maria@wvemploymentrights.com
mark@wvemploymentrights.com